Adam P. Segal, Esq.
Nevada Bar No. 6120
Adam K. Bult, Esq.
Nevada Bar No. 9332
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Emails: asegal@bhfs.com
          abult@bhfs.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ADAM P. SEGAL, ESQ., an individual<br><br>Plaintiff,<br><br>v.<br><br>STATE BAR OF NEVADA, a Nevada Public Corporation,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, Adam P. Segal, alleges and complains as follows:

1. Plaintiff Adam P. Segal ("Mr. Segal") is an attorney who has represented the Laborers Local 872 Health & Welfare Trust ("ERISA Trust") since 1996.

2. Defendant, the Nevada State Bar, is a public corporation in the State of Nevada pursuant to NRS 7.275.

3. This declaratory judgment action arises under 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, and sections 402, 403, 404, 406, and 514 of the Employee Retirement Security Act of 1974 ("ERISA).

1

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 and 29 U.S.C. §§ 1132(a)(3)(B) and 1132(e) because Plaintiff seeks equitable relief to enforce ERISA and the terms of the ERISA Trust.

**SOLE CAUSE OF ACTION:**
**DECLARATORY JUDGMENT OF ERISA PREEMPTION**

5. The ERISA Trust is a 501(c)(9) nonprofit organization and a health and welfare plan under ERISA.

6. The ERISA Trust pays health claims on behalf of its participants, including workers covered by Laborers Local 872 collective bargaining agreements and their dependents.

7. When the ERISA Trust pays health claims for injuries caused by a liable third-party, the participant is obligated to repay the ERISA Trust out of any third-party recovery for those claims and any associated legal fees incurred by the ERISA Trust in securing such payment.

8. The participant's obligations to repay the ERISA Trust are set forth in the ERISA Trust's plan document and a separate agreement between the participant and the ERISA Trust.

9. As terms of an ERISA plan, the ERISA Trust's third-party repayment obligations are enforceable under Federal law.

10. Julie Ann Cintron Tafoya ("Tafoya") was a participant in the ERISA Trust whose medical claims from a car accident were paid by the ERISA Trust.

11. Attorney Donald Kudler ("Kudler") was Tafoya's attorney seeking recovery from a liable third-party for Tafoya's injuries.

12. Tafoya signed the ERISA Trust's repayment agreement and was otherwise bound by the terms of the ERISA Trust's plan documents as a condition precedent to receiving benefits from the ERISA Trust.

2

13. Kudler was aware of the ERISA Trust's claimed interest as to any third-party recovery on behalf of Tafoya.

14. On information and belief, other claimants to whom Tafoya promised payment had also asserted interests against any third-party recovery Mr. Kudler secured on behalf of Tafoya, and made Kudler aware of such claims.

15. No person or entity has ever asserted an interest against the ERISA Trust or to any amount recovered by Mr. Segal for the ERISA Trust, and the ERISA Trust never promised payment from any such recoveries to anyone.

16. Thus, the ERISA Trust was one of many claimants who asserted an interest against Tafoya through her attorney Kudler.

17. Under Nevada State Bar Formal Opinion No. 31, only where payment recipient has promised payments to others do "interests" arise sufficient to trigger the safekeeping obligations set forth in Nevada Rule of Professional Conduct 1.15.

18. Kudler recovered $15,000 on behalf of Tafoya from the liable third-party's insurance carrier.

19. As a result of Kudler's recovery of the $15,000, he was obligated under Nevada Rule of Professional Conduct 1.15 to hold such funds, which were recovered in the course of his representation of Tafoya, and required to keep and safeguard the funds "*until* the dispute is resolved" as to which parties with interests in those funds are entitled to it.

20. When Kudler delayed in confirming and acquiescing to the ERISA Trust's assertion of its interest, the ERISA Trust sued Tafoya to enforce and declare its rights.

21. Because the ERISA Trust's claims and attorney's fees exceeded the $15,000 recovery, and because its claim was the only first-priority federal ERISA plan claim, the ERISA Trust asserted the position that it was solely entitled to the entire $15,000.

22. To obtain dismissal of that action, Kudler assured the court, in that other action, that he would make sure that the ERISA Trust was fully-paid once he recovered the insurance proceeds, as the transcript of those proceedings confirms.

23. Based on Kudler's representations, and that prior court's apparent long-time knowledge of Kudler's good reputation, that prior court agreed to dismiss the ERISA Trust's action as moot, the ERISA Trust having been assured full repayment by Mr. Kudler in open court.

24. Thereafter Kudler *did not* comply with his obligations to keep the $15,000 *until* any disputes about it were resolved.

25. Instead, Kudler instructed the liable party's insurance company to issue its payment jointly to Kudler, Tafoya and the ERISA Trust, and did so without conferring with Mr. Segal.

26. Kudler then instructed his client Tafoya to endorse the payment over to the ERISA Trust, as he did as well, and did so without conferring with Mr. Segal.

27. Kudler then sent the $15,000, now fully payable to the ERISA Trust, to Mr. Segal's office and purported to transfer the obligation to keep and sort out the competing interests to Mr. Segal, none of which Mr. Segal ever consented or agreed to do.

28. As a result of Kudler's actions described in the prior paragraph, the $15,000 payment, now fully payable to the ERISA Trust, was converted into a plan asset under Section 3(43) of ERISA.

29. Because Mr. Kudler turned the $15,000 ERISA Trust asset over to Mr. Segal, who was already a party-in-interest to the ERISA Trust under Section 3(14) of ERISA, Mr. Segal was also a functional fiduciary as to any discretionary control he had over the disposition of that check, under Section 3(21) of ERISA.

4

30. Mr. Segal does not believe he had any discretionary authority regarding what to do with the plan asset in question, but the Nevada State Bar asserts that he did, so it is assumed for purposes of this declaratory judgment action that he did.

31. Because Mr. Kudler converted the $15,000 payment into an ERISA Trust asset and provided it to Mr. Segal, federal law required that such asset "be held in trust by one or more trustees" who then have "exclusive authority and discretion to manage and control the assets" (Section 403(a) of ERISA), which must be used "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" (Section 404(a)(1) of ERISA).

32. ERISA Trust assets *cannot* be held in trust for the benefit of a participant's creditors and no fiduciary can knowingly permit that to happen or facilitate it.

33. No ERISA Trust fiduciary could legally endorse the payment back to Kudler so that it could be distributed to Tafoya's creditors.

34. Mr. Segal complied with this clear federal law and turned over the $15,000 check to the ERISA Trust, as was mandated by ERISA.

35. On information and belief, Mr. Segal's associate Mr. Jeskey had multiple conversations and other correspondence with Kudler regarding what had happened and why.

36. Dissatisfied with the result he caused by his violation of Rule 1.15, Kudler filed a Nevada State Bar complaint against Mr. Segal, alleging it *was actually Mr. Segal who violated Nevada Rule of Professional Conduct 1.15*, not Kudler, even though Kudler represented the only party in this scenario against which any "interests" the recovery were ever asserted for the purposes of Rule 1.15.

37. Following an investigation that did not include ever speaking with Mr. Segal, the Nevada State Bar, ignoring its Formal Opinion No. 31 and apparently accepting Kudler's contention that he had successfully transferred his Rule 1.15 obligations to Mr. Segal, issued a formal complaint against Mr. Segal.

38. In its complaint, the Nevada State Bar asserts that Mr. Segal was required by Rule 1.15 to hold the $15,000 in trust for the benefit of Tafoya's creditors.

39. ERISA clearly prohibited doing anything with the $15,000 other than transmitting it to the ERISA Trust for use for the sole benefit of participants.

40. The two duties cannot be reconciled, leaving Mr. Segal in an impossible position, caused by Kudler's violation of his duty to keep those funds *until* all disputes were resolved.

41. On information and belief, no attorney, ever, anywhere in the country, has conducted himself the way Kudler has with regard to his client Tafoya and her insurance recovery, namely unilaterally converting his client's recovery into an ERISA Trust asset, turning it over to one claimant among many without making any effort to determine the various competing interests, and then directing counsel for just one of those claimants (the ERISA Trust counsel no less), to *do Kudler's job for him*, and see that others are paid.

42. It was impossible for Mr. Segal to simultaneously fulfill his duties under ERISA and the alleged duty he had under Nevada Rule of Professional Conduct 1.15, as (incorrectly in Mr. Segal's view) interpreted by the Nevada State Bar in this case.

43. The resolution, however, is dictated by ERISA, which preempts, through both complete and conflict preemption, any and all state laws that conflict with ERISA.

44. ERISA sets forth and completely occupies the area of law concerning disposition and handling of ERISA Trust assets, and therefore complete preemption prevents the Nevada State Bar's application of Rule 1.15 here to require something different as to such plan assets.

6

45. ERISA required specific actions of Mr. Segal, assuming, as the State Bar alleges, he had discretion as to the disposition of the ERISA Trust assets in question, and therefore conflict preemption prevents the Nevada State Bar's application of Rule 1.15 on these facts.

46. In this case, Nevada Rule of Professional Conduct 1.15, as interpreted and applied by the Nevada State Bar in this case, directly conflicts with Mr. Segal's and the ERISA Trust's obligations under ERISA regarding how to deal with ERISA Trust assets, each requiring two completely different dispositions of the $15,000 check.

47. In such a case, Mr. Segal had no choice but to do as he did, and turn those assets over to the ERISA Trust.

48. If that is not, in fact, the case, Mr. Segal nevertheless will need this Court's declaratory judgment that ERISA did not prevent Mr. Segal from doing what the State Bar contends, so that Mr. Segal, and any other plan counsel faced with this situation (it will probably never happen, as Kudler's actions appear unique in the history of ERISA since 1974), will need to know how to conduct themselves faced with these two contradictory mandates.

49. The Court has an interest in avoiding contradictory and/or ethically dangerous precedent.

WHEREFORE, Mr. Segal prays for relief as follows:

1. Declaratory judgment finding that ERISA required the ERISA Trust asset to be turned over to the ERISA Trust, just as Mr. Segal did;

2. Declaratory judgment that, assuming the Nevada State Bar is correct that Kudler's Rule 1.15 obligations were transferred to Mr. Segal somehow, Rule 1.15 is preempted by ERISA;

3. Declaratory judgment that, in light of ERISA preemption, Mr. Segal did not violate Rule 1.15 by complying with ERISA, such state law being inoperable on these facts;

4. An award of fees and costs to Mr. Segal for having to bring this action and;

7

5. Such other appropriate relief as the Court may decide.

Dated this 22nd day of August, 2013.    BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:/s/ Adam P. Segal
Adam P. Segal, Esq.
Nevada Bar No. 6120
Adam K. Bult, Esq.
Nevada Bar No. 9332
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135
Email: asegal@bhfs.com

020052\0253\10641562.3

8